Argued 13 March, decided 16 April, 1907.

## GILLETT v. DODGE.

89 Pac. 741.

CORPORATIONS—AGREEMENT OF ORGANIZERS—WEIGHT OF EVIDENCE.

Where plaintiff, defendants, and others holding an option on mining property, transferred it to a corporation formed by them, taking stock according to their interest in the option, and, the option expiring, defendants purchased the property on their own account, evidence in a suit to compel a conveyance to the corporation, *held* to show that it was agreed between the holders of the option, that the price of the property should be paid by the corporation, and not that plaintiff and defendants should pay for the property with their own funds, and defendants would not be required to convey to the corporation in payment of their stock.

From Lane: JAMES W. HAMILTON, Judge.

Suit by E. F. Gillett against W. H. Dodge, C. Runyard and the Sunset Gold Hill Mining Co., resulting in a decree for defendants, from which this appeal is taken.          AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Lark Bilyeu.*

For respondents there was a brief over the name of *Woodcock & Potter,* with an oral argument by *Mr. Edwin O. Potter.*

PER CURIAM. This is a suit brought by a trustee and stockholder of a corporation, against two of his co-trustees to compel the latter to convey to the corporation certain mining property. After the suit had been commenced, the corporation was, by order of the court, made a party defendant, and answered, admitting the allegations of the complaint and praying for the same relief as the plaintiff. There are no questions of law in the case, and a brief reference to the facts will be sufficient. In November, 1902, one Olston, who had an option from Young and Fischer for the purchase of the Sunset group of mines in the Blue River district, interested one T. S. Cogswell, a mining broker in Seattle, in the enterprise, and he in turn persuaded the plaintiff, Gillett, and the defendants, Dodge and Runyard, to visit the mines with a view to investing. After inspecting the property, Gillett, Dodge and Runyard agreed to take a three-fourths interest in the option, advancing $1,500 to secure the same; the remaining one-fourth to belong to Olston and

Cogswell as a consideration for their services in promoting the enterprise. On December 16, 1902, the five persons above named organized the Sunset Gold Hill Mining Co., a corporation, under the laws of the State of Washington, with a capital stock of $1,000,000, divided into 1,000,000 shares of the par value of $1 each, for the purpose of handling and developing the property, under an agreement that the respective interests of the parties should be transferred to the corporation. and they should take stock in payment therefor. In pursuance of this arrangement, Gillett, Dodge and Runyard each subscribed for 250,000 shares, and Cogswell and Olston for 125,000 each, and these five persons were elected trustees. Each of the persons named thereupon conveyed to the corporation his interest in the contract or option for the purchase of the mining property, in consideration- of which the corporation issued and delivered to him paid-up capital stock to the amount of his original subscription. They thereupon donated to the treasury of the corporation 200,000 shares of stock to be sold for the benefit of the company; the proceeds to be expended as directed by the trustees, or a majority of them, for any and all purposes, which they might deem necessary in conducting and carrying on the business. Two of the trustees went East for the purpose of selling treasury stock, but were unable to dispose of the same, and neither the corporation nor the promoters thereof provided money with which to take care of the option when it matured, and it expired by limitation on May 10, 1903. Thereafter, the defendant Dodge purchased the property on his own account and conveyed a one-half interest therein to his codefendant, Runyard.

The object of this suit is to have them decreed to hold the title so purchased in trust for the corporation. The complaint alleges, and the plaintiff insists, that the original contract or agreement between Cogswell and Olston, and Gillett, Dodge and Runyard was that the latter should purchase and pay for the mining property with their own funds, and then convey it to the corporation in payment of the capital stock subscribed for by them, and that the purchase made by Dodge after the expiration of the option was in fraud of his copromoters, and ought

to be declared to be for their benefit. These positions are controverted by the defendants, who claim that the understanding was that the payments due on the purchase price of the mines should be paid by the corporation from the proceeds of the sale of its treasury stock, and that as no money was received from that source, and none provided by the promoters, the option expired by limitation, and thereafter Dodge purchased the property on his own account with the knowledge and consent of all parties. The evidence on these questions is conflicting, but a careful examination of the record satisfies us that the trial court was right in finding in favor of the defendants. They are supported on the point that the purchase price of the mining property was to be paid by the corporation from the proceeds of the sale of the treasury stock by Mr. Douglas, the attorney under whose advice the corporation was formed, and who prepared the several papers necessary to carry out the plans of the incorporators, and who was familiar with all the transactions in reference to the matter, and also by letters written by the plaintiff and Olston.

Douglas testifies that, according to his understanding, Gillett, Dodge and Runyard were under no obligation to purchase the property with their own funds, but that the treasury stock of the corporation was to be sold to raise money with which to complete such purchase, and that the stock subscribed for by the respective parties was fully paid up by the transfer to the corporation of the subscriber's interest in the option. Olston wrote, under date of January 28, 1903, to Runyard: "As soon as any money appears in the treasury, better make a payment on the purchase price." On February 9th, he wrote: "If things are hanging fire back East, I wish you would advance the company ten or fifteen hundred with which to make a payment, as we must avoid the possibility of any complications." On March 26th he wrote Gillett: "I have felt that Cogswell and I have been more than fair in the Sunset deal and believing that you and Dodge have disposed of stock with which to pay for the mine as agreed upon by the directors, and one-fourth of which Mr. Cogswell and I contributed, I deem it but fair

and just that a part of the consideration be paid now to avoid any trouble and litigation." And, again, on the 29th: "Mr. Cogswell and I shall protect ourselves by having the consideration deposited in case of failure of the company to make payment on that day." On March 7th, the plaintiff wrote to Dodge, who was East for the purpose of selling stock: "Don't let any decent offer go by for a big block — anything above 20,000 dollars for the 150 or even 200 thousand shares, for we must get this property sure, as there are parties after it that are willing to pay five·times as much as we do." And, again, on March 23d, he wrote to Dodge, advising him that he (Gillett) had "bought out" Runyard, and that "now it is you and me to carry the thing through, and I believe we can. I have a good help here on this end, but not near enough to carry it through, so push all you can and come on when you like, only raise all possible for we will need it or lose all. Take any reasonable offer for a big block of the stock. Don't hesitate to use your own judgment, only get it and I will stand by you." And, on the same day, he wired Dodge: "Go ahead, close quick, make more concessions if necessary."

These letters and telegrams were written and sent before there was any controversy between the parties, and quite clearly indicate that the understanding of Olston and Gillett was that the property should be paid for by the corporation from the proceeds of the stock to be sold by it. It is reasonably clear, therefore, that Dodge was under no obligation to take up the option with his own funds for the benefit of the corporation, and violated no duty to it in doing so. The purchase of the property by him, after the expiration of the option held by the corporation, was open and above board, and with the knowledge and consent of his associates. They were all, with perhaps the exception of Cogswell, at Eugene at the time, and were without funds and unable to raise money with which to pay their shares of the purchase price. They were informed by the owners of the property after the expiration of the option that it would be sold to the first party who desired to purchase it at the price demanded. Plaintiff had no money with which to make the purchase, and

said he was sorry to lose the property, but had nothing more to say, as the time had expired. Dodge's purchase was made openly, after consulting and advising with his attorney, and there is no disclosure by the record which will justify a court in decreeing that he should now convey it to the corporation which had lost its rights by not complying with the option.

Decree affirmed. AFFIRMED.